# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

MICHAEL HUNTOON,

Defendant.

No. CR-16-00046-TUC-DCB (DTF)

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Michael Huntoon's (Huntoon) motions to suppress evidence (Docs. 66, 89, and 97) on referral by order of the Honorable David C. Bury, United States District Judge, pursuant to LRCrim 5.1 (Doc. 96). The government responded to Huntoon's motions (Docs. 79, 100, and 102). These matters came before Magistrate Judge Ferraro for hearing on March 15 and 20, 2018. (Docs. 108 and 114.) Neither the government nor Huntoon offered live testimony. Instead, both parties submitted exhibits for the Court to consider. As explained below, the Magistrate Judge recommends that the District Court, after its independent review, deny the motions (Docs. 66, 89, and 97).

## I.

## FACTUAL BACKGROUND

The relevant facts are not in dispute. This case involves child pornography distribution using peer to peer file sharing (P2P) software over the Internet.  P2P file sharing is a method of communication available to Internet users through publically

available software. Computers linked together through the Internet using this software form a network. The P2P network enables its users to share designated files from their computer with anyone using compatible P2P software on the Internet worldwide.

Here, Huntoon was investigated by three different law enforcement agencies for sharing child pornography over the Internet via a P2P network; two municipal police departments within the State of Arizona and the Department of Homeland Security. All three investigations began after law enforcement officers, who at different times, discovered that child pornography was being shared on a P2P network believed to originate from Huntoon's computer. While State officers quickly discovered each other's investigation, the federal agents were unaware of the State investigations until a federal search warrant was executed at Huntoon's last known address. During the execution of this warrant, Huntoon's father told the federal agents his son was in State custody on State child pornography charges. The federal agents then discovered that Huntoon had been arrested after police found child pornography on his laptop that was seized pursuant to a State search warrant.

The federal search resulted in the seizure of numerous items including a USB flash drive and a Lenovo computer tower.[1] Huntoon is charged in a two count indictment with distribution of child pornography and knowingly accessing child pornography. (Doc. 1.) The indictment is based on the child pornography found on the USB flash drive (Count Two) and the child pornography that federal agents discovered was being shared by Huntoon over the Internet (Count One).

Nearly two years after the execution of the State search warrant and on the eve of the federal trial, State officers provided a mirror image of Huntoon's laptop to federal

---

[1] In the motions referred to the Magistrate Judge, Huntoon does not seek to suppress any evidenced seized in this search. However, at the hearing on March 15, 2018, the government announced its intention to offer evidence found on the Lenovo tower computer. Thus, on March 18, 2018, Huntoon moved to suppress the evidence found on the Lenovo tower computer (Doc. 104). This motion has not been referred to a magistrate judge due to the government's late notice of its intention to offer evidence found on the Lenovo tower computer which resulted in the late filing of Huntoon's motion to suppress this evidence. (*See* Doc. 115 at p. 53.)

agents. Without first obtaining a search warrant, federal agents examined the laptop for the purpose of providing trial testimony concerning the child pornography charged in the federal indictment. The warrantless search indeed revealed that many of the images found during the examination appeared to be the images shared by Huntoon on the P2P network alleged in Count One.

## II.

## DISCUSSION

Huntoon moves to suppress all evidence found on the laptop seized in the State search. Huntoon asserts this search warrant lacked probable cause and was supported by knowingly false information. Huntoon also argues the recent examination of the mirror image of his laptop by federal agents is presumptively unreasonable because they did not get a search warrant.

In the affidavit supporting the State search warrant, the affiant, Detective Frank Angel (Angel), Phoenix Police Department, describes P2P networks, file sharing and other technical aspects of his investigation. He then describes how he began his investigation using a law enforcement version of P2P software to obtain images of child pornography being publicly shared by the defendant over a P2P network. The affidavit describes the names and titles of the images he viewed and provided a description, which clearly showed the images and videos depicted the sexual exploitation of minors.

During Det. Angel's preliminary investigation of IP address associated with the child pornography, he discovered Detective William McDonald, Chandler Police Department, was also investigating the same IP address. According to the affidavit, Det. McDonald had obtained many of the same images Det. Angel had.  Det. Angel took over the investigation because he was a member of the AZICAC[2] Task Force, which included the Pinal County Sheriff's Office, where the IP address was believed to be located.

According to the affidavit, Det. Angel learned that Huntoon, a registered sex offender, was living in a 5th wheel recreational vehicle next to a home at 1404 S. Smythe

[2] Arizona Internet Crimes Against Children

- 3 -

Drive, Apache Junction, Arizona. He also learned Huntoon had access to the Internet from that address. On October 27, 2015, Det. Angel obtained a state search warrant for the premises at 1404 S. Smythe Drive and the 5th wheel recreational vehicle parked on the property.   The search warrant was executed on October 29, 2015, and items of evidentiary value were seized, including the laptop computer that is the subject of Defendant's motion to suppress.

Huntoon moves for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), arguing Det. Angel, the affiant, made a knowingly false statement concerning how Huntoon acquired Internet access. Here, the affidavit describes how Det. Angel learned that Huntoon had access to the IP address located at 1404 S. Smythe Drive, as follows:

> Detective Southwick went to 1404 S. Smythe Drive and verified that Cheryl Friederich along with two minor children under CPS care reside at 1404 S. Smythe Drive. Cheryl Friederich told Detective Southwick that her mailing address is 1404 S. Cedar Drive but she and the two children reside in 1404 S. Smythe Dr. She further told Detective Southwick that Michael Huntoon and his wife Courtney reside in the 5th wheel RV parked on the property at 1404 S. Smythe Drive. Cheryl told Detective Southwick that she gets her internet in the home and that Michael Huntoon uses an Ethernet cable and runs it from the 5th wheel RV into her home and into the router. This cable connects Michael's laptop to the internet. Detective Southwick also met with Michael Huntoon and Michael stated that he and his wife reside in the 5th wheel at 1404 S. Smythe and he accesses the internet from the Ethernet cable from the RV to the house. He and his wife Courtney are not allowed into the home at 1404 S. Smythe if the children are there without Cheryl. All the residents access the mobile RV also parked on the property at the north end of the lot.

(Doc. 100-5 at p. 14.) According to Hunton, the conversation between Det. Southwick and Cheryl Friederich was recorded. A transcript of the conversation was attached to Huntoon's motion.  The relevant portion of the transcript is as follows:

> Detective Southwick: So do you have a router and a modem and all that?
> Cheryl [Friederich]: I don't honestly know.
> [Detective]Southwick: He doesn't have his own connection out there as far as the hardware for a media account?

> Cheryl [Friederich]: No he's got it connected on mine.
> [Detective] Southwick: He's got it connected to yours, alright.

(Doc. 89 at Ex. 3.) The gravamen of Huntoon's falsity claim is that Det. Angel represented that Huntoon connected to the Internet via an Either net cable attached to Cheryl Freiderich's modem. (Cheryl Freidrech is Huntoon's mother.) What Cheryl Freiderich actually told detectives was that her son (Huntoon) received his Internet service from her but she did not know how he was connected.

The device Huntoon used to connect to his mother's Internet service is not material. The material fact is that Huntoon was connected to his mother's Internet service where the child pornography was received and shared. This was not in dispute at the motions hearing. When, as here, the offending material does not affect probable cause there is no need for a *Franks* hearing. *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). Accordingly, the Court denied the request for a *Franks* hearing.

This Court also assesses whether there is substantial evidence in the record supporting the judge's decision to issue the State search warrant. *See Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) ("[T]he task of reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant.") Here, the affidavit details the affiant's extensive training and experience investigating child pornography, describes Internet software often used to obtain and distribute child pornography on the Internet. The affiant then details the results of two State investigations, which included discovering specific videos depicting sexual exploitation of minors that were available for sharing on a specific IP address. The officers were advised by the Internet provider that this IP address was for Ms. Friederich's Internet connection. Ms. Friederich told investigators her son was connected to her Internet service. The Court finds that based on the affidavit there is substantial evidence in the record to support a fair probability that State investigators would find child pornography at the location to be searched and on Huntoon's laptop.

This Court also rejects Huntoon's contention the State warrant is invalid because there was no recording of Det. Angel being sworn in before the warrant was issued.  In support of his argument, Huntoon merely alleges "upon information and belief" that there was an irregularity (Doc. 89-3 at p. 6). However, the State Justice of the Peace Magistrate signed the search warrant avowing that it was "SUBSCRIBED AND SWORN to before me this 27th day of October, 2015." (Doc. 100-5 at p. 5.) Huntoon has offered no evidence to the contrary. Accordingly, the Court will recommend that Huntoon's motion to suppress the results of the State search be denied without a *Franks* hearing.

Turning now to the federal agent's examination of the laptop seized pursuant to the State search, the Court assess whether a separate warrant was necessary.  As mentioned above, about two years after State law enforcement officers searched Huntoon's laptop and found child pornography, federal agents received a mirror image of the laptop.  Thereafter, the federal agents conducted their own examination of Huntoon's laptop without first obtaining a warrant. Huntoon argues this warrantless search violated his rights under Fourth Amendment.

Whether there was a Fourth Amendment violation turns on whether there was a search. A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. For example, in *Illinois v. Andreas*, 463 U.S. 765, 771 (1983), the Supreme Court held,

> The Fourth Amendment protects legitimate expectations of privacy rather than simply places. If inspection by police does not intrude upon a legitimate expectation of privacy, there is no "search" subject to the Warrant Clause. [Citation omitted] The threshold question, then, is whether an individual has a legitimate expectation of privacy in the contents of a previously lawfully searched container. It is obvious that the privacy interest in the contents of a container diminishes with respect to a container that law enforcement authorities have already lawfully opened and found to contain illicit drugs.  No protected privacy interest remains in contraband in a container once government officers lawfully have opened that container and identified its contents as illegal.

Later, in *United States v. Jacobsen*, 466 U.S. 109, 114-15 (1984), employees of a private freight company opened a damaged package and found a white powdery

- 6 -

substance. They summoned federal agents who opened the package again and tested the powder. The test revealed that the package contained cocaine. The Supreme Court analyzed the effect a private search had on the reasonableness of the package owner's expectation of privacy. The Court determined:

> that agents of a private carrier independently opened the package and made an examination that might have been impermissible for a government agent cannot render otherwise reasonable official conduct unreasonable. The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred.

*Jacobsen*, 466 U.S. at 115. The Court ultimately held that the federal agents did not "infringe any constitutionally protected privacy interest that had not already been frustrated as a result of the private conduct." *Id.* at 126.

This Court has determined that the State police detectives lawfully searched the laptop and found child pornography. As in *Jacobsen*, Huntoon's privacy interest had been lawfully frustrated. The distinction between a private citizen disrupting that expectation of privacy and the police lawfully doing so is of no legal significance. Once police lawfully discovered contraband on the laptop Huntoon lost his expectation of privacy, at least to the extent the laptop had already been searched by the police. Obviously, the police will not be required to seek another search warrant to examine the laptop in preparation for a State trial. Huntoon no longer had a reasonable expectation of privacy remaining in the contraband while the laptop was possessed by the police and he did not regain an expectation of privacy after a mirror image of the laptop was given to federal agents.

All that remains is to determine whether the federal agents' examination exceeded the lawful parameters of the State search warrant. Put differently, did the federal agents look into a part of the container not searched by the State detectives? The State search warrant permitted a search for:

- Any and all computer records, documents, and materials, including but not limited to computer towers (desktop), notebook computers (laptops) […]

- Any image or movie file containing or displaying minors engaging in any sexual activity or sexual exploitation contained within any media storage device. To include any computer media storage device, video tape, DVD and/or other media. […]

- Any documentation, written or electronic, showing the use of, possession of, or affiliation with any online peer to peer network […]

(Doc. 100-5 at p.3.) The affidavit limited the search to "not reading any electronic mail or chat conversations." *Id*. at p. 16.

In sum, the State search warrant authorized a robust search for any child pornography. The federal agents' examination may not exceed this authorization. Venturing into other areas would clearly implicate Huntoon's expectation of privacy in those unexplored places. Provided that the federal agents examined Huntoon's laptop only for child pornography there was "no search subject to the Warrant Clause." *Illinois v. Andreas*, 463 U.S. at 771. Thus, this Court will recommend that Huntoon's motion to suppress evidence found by federal agents on Huntoon's laptop be denied as to any child pornography recovered from the laptop.

Lastly, the Court disagrees with Huntoon's argument that in turning over the mirror image of his laptop to federal agents the terms of the search warrant were violated and that such an act "was also unreasonable under the Fourth Amendment." (Doc. 98 at p. 18.) The State search warrant provides:

> After completion of the evidence copies, the duplicate originals, or "forensic images" will be sealed and retained in evidence storage for later discovery and trial purposes. None of the contents of the duplicate original, other than those which may be required for prosecution will be displayed to any person other than the analyst and case agents, or otherwise disclosed, used or copied.

(Doc. 100-5 at p. 16.) The express terms of the State warrant do not prohibit State agents from turning over Huntoon's laptop to federal agents. The warrant permits use of Huntoon's laptop for prosecution. Nor was this language in the search warrant intended to restore any reasonable expectation of privacy that Huntoon previously had in the

laptop. The purpose of the restriction on the disclosure of Huntoon's laptop is to protect the identity of the victims of child pornography.

## III.

## RECOMMENDATION

Accordingly, it is recommended that, after an independent review of the record, the District Court **deny** Defendant's motions to suppress (Docs. 66, 89, and 97).

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived.

Dated this 23rd day of March, 2018.

Honorable D. Thomas Ferraro
United States Magistrate Judge